[No. A128698. First Dist., Div. Two. May 26, 2011.]

AYANA HILL, Plaintiff and Appellant, v.
ROLL INTERNATIONAL CORPORATION et al., Defendants and
Respondents.

**COUNSEL**

Reese Richman and Michael R. Reese for Plaintiff and Appellant.

Roll Law Group, Daniel S. Silverman, Daniel A. Beck; Sheppard Mullin Richter & Hampton and Neil A.F. Popović for Defendants and Respondents.

## OPINION

**RICHMAN, J.**—Plaintiff Ayana Hill bought bottles of Fiji water, on the label of which was a green drop—a drop, she claimed, that represented Fiji bottled water was environmentally superior to other waters and endorsed by an environmental organization. Alleging that it was not, Hill filed a proposed class action on behalf of herself and other consumers of Fiji bottled water, naming Roll International Corporation (Roll) and Fiji Water Company LLC (Fiji Water), asserting violations of California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), false advertising law (FAL) (*id.*, § 17500 et seq.), and Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), plus common law fraud and unjust enrichment.[1] The trial court ruled that Hill's amended complaint failed to state a cause of action (Code Civ. Proc., § 430.10, subd. (e)), denied further leave to amend, and dismissed the complaint. We affirm.

## I. BACKGROUND

Hill's complaint alleges that consumers have become increasingly aware of, and sensitive to, the impact of their purchases on the environment, spawning an environmental "movement" that demands products that are "environmentally superior" to like products in their manufacturing, packaging, and distribution processes. The term "green" (oddly capitalized throughout the complaint) is commonly used to describe such products and the movement that demands them. Companies designate their products as green through written representations and visual images—"such as a green raindrop or pictures of the Earth"—and consumers who see such representations on products are led to believe that those products are "environmentally superior" when compared to products that lack such designations.

Companies motivated by increased profits have made deceptive, misleading, and false representations, a practice known as "greenwashing" (again, capitalized) that "has become so rampant" that the Federal Trade Commission (FTC) has issued standards known as " 'Green Guides.' "

Hill further alleges that defendants[2] have allegedly violated several provisions of those standards by misrepresenting their product as environmentally

---

[1] All undesignated section references are to the Business and Professions Code.

[2] As noted, Hill's complaint names as defendants both Roll and Fiji Water. Concerning this, defendants represent that "Fiji Water is 100% owned by Fiji Water Company Holdings LLC, which in turn is 100% owned by the Stewart & Lynda Resnick Revocable Trust. Roll is a holding corporation for various other businesses owned by the Resnicks, but Roll does not own Fiji Water, and was improperly sued by [Hill]." This issue was not presented below, and Hill does not concede the matter here. The only evident relevance of the issue on appeal goes to a pleading question we do not reach: the specificity of Hill pleading her common law fraud

superior to those of their competitors when, in fact, the processes used for Fiji bottled water "cause as much, if not more, environmental damage" as their competitors.[3] Defendants "accomplish this deception," first, through conspicuous placement of a " 'Green Drop' seal of approval label on the front of the product" that "looks similar to environmental 'seals of approval' . . . by several independent, third-party organizations." This connotes approval by such organizations when, in fact, the green drop is created by defendants themselves, for "touting their own product." Further, in their packaging and marketing, defendants have "called their product FijiGreen" and, in stores and other public places, "stated that 'Every Drop is Green.' " And, Hill alleges, "This Green Drop is deceptive because it conveys that the product is environmentally sound and superior to other bottled waters that do not contain the Green Drop. Furthermore, the Green Drop looks similar to environmental 'seals of approval' conveyed by several independent, third-party organizations, thereby further misleading consumers to believe that the Green Drop is a seal of approval from an independent third party."

Hill's pleading includes photographic images. One shows the front label of a bottle that bears a circumscribed green drop; another shows four back labels, each with the green drop symbol adjacent to an indicated Internet Web site, "fijigreen.com"; and a third seems to show a store display featuring two of the green drop symbols, and "Every drop is green" between them. A full page of illustrations provided by Hill (and appended to this opinion) shows the green drop—not circumscribed—next to allegedly "independent" seals designating lack of testing on animals or compliance with unstated environmental standards, plus symbols for recyclable products and Earth Day.

Hill's personal allegations are that, starting in 2008, she bought Fiji water about twice a week from Walgreens stores in San Francisco, relying on representations that the product was "environmentally friendly and superior." She paid a price about 15 percent higher than other bottled water, and would not have bought Fiji water "had she known the truth that the Green Drop was the creation of [defendants], not a neutral party or environmental group, and that Fiji bottled [w]ater was not environmentally friendly or superior to similar bottle[d] water available at cheaper prices."

---

cause of action. (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157–158 [2 Cal.Rptr.2d 861].) We therefore have no need to address the issue.

   [3] We have no need to recite the allegations of why Fiji water production is no less harmful than that of competitors, but we note that defendants evidently dispute much of it, such as a claim that their bottles are manufactured in China. For demurrer purposes, we disregard the potential difficulty of Hill proving her alleged facts. (*McKenney v. Purepac Pharmaceutical Co.* (2008) 167 Cal.App.4th 72, 77 [83 Cal.Rptr.3d 810].)

## II. DISCUSSION

### A. *Review Standards*

On review of a demurrer sustained without leave to amend, "[t]he reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) "[I]t is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Id.* at p. 967.)

A court generally confines itself to the pleading but, as appropriate, may extend its consideration to matters subject to judicial notice. (*Smiley v. Citibank* (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690].) "[W]hen the allegations of the complaint contradict or are inconsistent with such facts, we accept the latter and reject the former. [Citations.]" (*Blatty v. New York Times Co.* (1986) 42 Cal.3d 1033, 1040 [232 Cal.Rptr. 542, 728 P.2d 1177].) We give the same precedence to facts evident from exhibits attached to the pleading. (*Breneric Associates v. City of Del Mar* (1998) 69 Cal.App.4th 166, 180 [81 Cal.Rptr.2d 324]; *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1626–1627 [272 Cal.Rptr. 623].) Efforts to show *reasoning errors* are beside the point. " 'Our only task in reviewing a ruling on a demurrer is to determine whether the complaint states a cause of action.' " (*People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 300 [58 Cal.Rptr.2d 855, 926 P.2d 1042]; see *Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) We do that independently (*Smiley v. Citibank, supra,* 11 Cal.4th at p. 146), regardless of reasons stated by the trial court. (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111 [55 Cal.Rptr.3d 621].)

Our division has stated, in resolving an appeal based on the reasonable-consumer standard following a bench trial, that "[t]he standard to be used in evaluating whether an advertisement is deceptive under the UCL is purely a question of law . . . ." (*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 503 [129 Cal.Rptr.2d 486].) Other courts have stated that whether a business practice is fraudulent, deceptive, or unfair is generally a question of

fact requiring the consideration and weighing of evidence, and usually cannot be decided on demurrer. (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 134–135 [61 Cal.Rptr.3d 221]; *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1472 [49 Cal.Rptr.3d 227]; *Williams v. Gerber Products Co.* (9th Cir. 2008) 552 F.3d 934, 938–939.) This is not an irreconcilable conflict: *generally* and *usually* do not mean *invariably*, and a demurrer must be sustained when the assumed facts show lack of a valid claim. (See, e.g., *McKenney v. Purepac Pharmaceutical Co., supra*, 167 Cal.App.4th at p. 77.) And this is the case here, as we hold that, taking as true all well-pleaded facts in Hill's complaint, no *reasonable consumer* would be misled to think that the green drop on Fiji water represents a third party organization's endorsement or that Fiji water is environmentally superior to that of the competition.

## B. *Statutory Claims*

Broadly stated: The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the FAL]" (§ 17200); the FAL prohibits advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" (§ 17500); and the CLRA prohibits specified "unfair methods of competition and unfair or deceptive acts or practices" (Civ. Code, § 1770, subd. (a)). While the operative language of each law differs, Hill bases each claimed violation on an act not itself made a cause action. She uses the Environmental Marketing Claims Act (EMCA) (§ 17580 et seq.), section 17580.5, subdivision (a) of which incorporates into the EMCA definition of " 'environmental marketing claim' . . . any claim contained in the 'Guides for the Use of Environmental Marketing Claims' published by the Federal Trade Commission" (see 16 C.F.R. pt. 260 (2011)) (hereafter guides, or FTC guides).[4]

█ The FTC guides themselves flow from a task force of state attorneys general that looked into potentially misleading environmental advertising claims growing out of consumers' increased awareness of the environmental impacts of their purchases, and a " 'green marketing' " strategy by companies making environmental claims about their products. (*Association of National Advertisers, Inc. v. Lundgren* (N.D.Cal. 1992) 809 F.Supp. 747, 749–750.)

---

[4] Section 17580 provides as follows: "(a) Any person who represents in advertising or on the label or container of a consumer good that the consumer good that it manufactures or distributes is not harmful to, or is beneficial to, the natural environment, through the use of such terms as 'environmental choice,' 'ecologically friendly,' 'earth friendly,' 'environmentally friendly,' 'ecologically sound,' 'environmentally sound,' 'environmentally safe,' 'ecologically

The guides are "administrative interpretations of laws administered by the [FTC] for the guidance of the public in conducting its affairs in conformity with legal requirements" (16 C.F.R. § 260.1 (2011)), and they apply to a comprehensive range of environmental claims in marketing, "whether asserted directly or by implication, through words, symbols, emblems, logos, depictions, product brand names, or through any other means, including marketing through digital or electronic means, such as the Internet or electronic mail" (*id.*, § 260.2(a) (2011)). But "[b]ecause the guides are not legislative rules under Section 18 of the FTC Act, they are not themselves enforceable regulations, nor do they have the force and effect of law." (*Id.*, § 260.2(b) (2011).) They consist of general principles, followed by nonexclusive specific examples, and "are intended to provide a 'safe harbor' for marketers who want certainty about how to make environmental claims." (*Id.*, § 260.3 (2011).)

Our state Legislature, by incorporating the FTC guides into the CLRA definition of environmental marketing claims (§ 17580.5, subd. (a)), has

---

safe,' 'environmentally lite,' 'green product,' or any other like term, shall maintain in written form in its records the following information and documentation supporting the validity of the representation:

"(1) The reasons why the person believes the representation to be true.

"(2) Any significant adverse environmental impacts directly associated with the production, distribution, use, and disposal of the consumer good.

"(3) Any measures that are taken by the person to reduce the environmental impacts directly associated with the production, distribution, and disposal of the consumer good.

"(4) Violations of any federal, state, or local permits directly associated with the production or distribution of the consumer good.

"(5) Whether or not, if applicable, the consumer good conforms with the uniform standards contained in the Federal Trade Commission Guidelines for Environmental Marketing Claims for the use of the terms 'recycled,' 'recyclable,' 'biodegradable,' 'photodegradable,' or 'ozone friendly.'

"(b) Information and documentation maintained pursuant to this section shall be furnished to any member of the public upon request.

"(c) For the purposes of this section, a wholesaler or retailer who does not initiate a representation by advertising or by placing the representation on a package shall not be deemed to have made the representation.

"(d) It is the intent of the Legislature that the information and documentation supporting the validity of the representation maintained under this section shall be fully disclosed to the public, within the limits of all applicable laws."

Section 17580.5: "(a) It is unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied. For the purpose of this section, 'environmental marketing claim' shall include any claim contained in the 'Guides for the Use of Environmental Marketing Claims' published by the Federal Trade Commission.

"(b) It shall be a defense to any suit or complaint brought under this section that the person's environmental marketing claims conform to the standards or are consistent with the examples contained in the 'Guides for the Use of Environmental Marketing Claims' published by the Federal Trade Commission."

elevated the guides to tests of illegality, retaining the safe harbor feature only in that conformity with the guides is a defense to any CLRA action. (§ 17580.5, subd. (b); see fn. 4, *ante*.) This change was achieved by an amendment in 1995 that added section 17580.5 (Stats. 1995, ch. 642, § 4, p. 5079), but the gravamen of a CLRA action remains that the environmental marketing claim must be "untruthful, deceptive, or misleading." (§ 17580.5, subd. (a).)

Hill cites this general principle: "*General environmental benefit claims.* It is deceptive to misrepresent, directly or by implication, that a product, package or service offers a general environmental benefit. Unqualified general claims of environmental benefit are difficult to interpret, and depending on their context, may convey a wide range of meanings to consumers. In many cases, such claims may convey that the product, package or service has specific and far-reaching environmental benefits. . . . [E]very express and material implied claim that the general assertion conveys to reasonable consumers about an objective quality, feature or attribute of a product or service must be substantiated. Unless this substantiation duty can be met, broad environmental claims should either be avoided or qualified, as necessary, to prevent deception about the specific nature of the environmental benefit being asserted." (16 C.F.R. § 260.7(a) (2011).)

Hill then invokes this example: "*Example 5.* A product label contains an environmental seal, either in the form of a globe icon, or a globe icon with only the text 'Earth Smart' around it. Either label is likely to convey to consumers that the product is environmentally superior to other products. If the manufacturer cannot substantiate this broad claim, the claim would be deceptive. The claims would not be deceptive if they were accompanied by clear and prominent qualifying language limiting the environmental superiority representation to the particular product attribute or attributes for which they could be substantiated, provided that no other deceptive implications were created by the context." (16 C.F.R. § 260.7(a), example 5 (2011).) More specifically, Hill contends that the Fiji green drop is deceptive because it implies, in the circumstances, that an independent third party organization has endorsed Fiji water as environmentally superior, when in fact, the green drop is purely defendants' marketing creation.

■ Looking to the well-pleaded facts of Hill's complaint, and ignoring its hyperbole and legal conclusions, we assume as true that consumer demand for "green" products has grown, spawning a competitive "green marketing" strategy by companies to market their products as "green," a strategy that can be abused through misleading environmental claims. We assume as well that

Hill actually was, as she claims, misled in the context to believe that the green drop symbol on Fiji water was a seal implicitly indicating approval by a third party organization, and thus believed that the Fiji product was environmentally superior to competitors' bottled water. We also assume, for demurrer purposes, that Fiji water is in fact not environmentally superior.

█ The problem is that Hill's beliefs do not satisfy the reasonable consumer standard, as expressed in the FTC guides (16 C.F.R. § 260.7(a) (2011) [material implied claims conveyed "to reasonable consumers"]) and as used in our state's consumer laws. The reasonable consumer test used in the UCL and FAL derives from parallel parts of the Federal Trade Commission Act (15 U.S.C. § 41 et seq.), which requires a plaintiff to show potential deception of consumers acting reasonably in the circumstances—not just any consumers. (*Lavie v. Procter & Gamble Co., supra*, 105 Cal.App.4th at pp. 505–506.) Thus, for example, the standard is not a least sophisticated consumer (*id.* at p. 504), unless the advertising is specifically targeted to such a consumer. (*Id.* at p. 507.) Nor do we test the impact on the *unwary* consumer (*id.* at p. 508), although a reasonable consumer "need not be 'exceptionally acute and sophisticated' " and might not "necessarily be wary or suspicious of advertising claims." (*Id.* at pp. 509–510.) "Rather, California courts consistently have looked to the ordinary consumer within the larger population" (*id.* at p. 510), and the reasonable consumer standard is also established for the CLRA. (*Consumer Advocates v. Echostar Satellite Corp.* (2003) 113 Cal.App.4th 1351, 1360 [8 Cal.Rptr.3d 22].) It follows, in these days of inevitable and readily available Internet criticism and suspicion of virtually any corporate enterprise, that a reasonable consumer also does not include one who is overly suspicious.

█ Does the green drop on Fiji water bottles convey to a reasonable consumer in the circumstances that the product is endorsed for environmental superiority by a third party organization? No. The context of the symbol is vitally important (16 C.F.R. § 260.7(a) (2011)), but we start with the drop itself. It bears no name or recognized logo of any group, much less a third party organization, no trademark symbol, and no other indication that it is anything but a symbol of Fiji water. The example in the FTC guides does include, as likely to mislead, a "globe icon" with *or without* the words "Earth Smart" around it (*id.*, example 5); but a symbol of the Earth is more suggestive of a seal of an environmental organization and, as Hill's page of other images shows, could suggest the established Green Seal logo, with a stylized checkmark and the words "Green Seal" contoured around a globe. Fiji water has just a green drop, the drop being the most logical icon for its particular product—water. █ We assume, for demurrer purposes, that reasonable consumers would view the drop, together with its green color, as

referring to the environment, but the FTC guides do not prohibit, in the complaint's words, "touting" a product's "green" features. By providing guidelines and a " 'safe harbor' " for advertisers wanting to make environmental marketing claims (*id.*, § 260.3 (2011)), the guides promote making them, provided only that they do not mislead reasonable consumers.

And for context, a green drop on the back of every bottle appears right next to the Web site name, "fijigreen.com," further confirming to a reasonable consumer that the green drop symbol is by Fiji water, not an independent third party organization—and, of course, inviting consumers to visit the Web site for product information, which includes Fiji Water's explanation of its environmental efforts. The images in the complaint also belie the allegation that defendants have "called their product FijiGreen." In truth, it is simply a Web site name. Hill raises no allegations whatsoever that any information in the Web site is misleading.[5]

It is difficult from her briefing to discern what Hill means to gain from the "Every drop is green" slogan allegedly used at some point in store displays and other advertising. It is not clear that reasonable consumers would know of the slogan, for it does not appear anywhere on the bottled water, as far as the photographic images reveal. In any event, we do not see how the slogan, even if seen by consumers, alters the overall impression conveyed by the green drop and Web site address.

## C. *The* Koh *Ruling*

The discussion in the trial court included a then recent, unpublished ruling by a federal district court in a similar class action suit: *Koh v. S.C. Johnson & Son, Inc.* (N.D.Cal., Jan. 6, 2010, No. C-09-00927 RMW) 2010 U.S.Dist. Lexis 654 (*Koh*). Being unpublished, the ruling of course had, and has, no precedential value, but we examine it as we would a hypothetical further example. The suit, brought against S.C. Johnson & Son, Inc., the manufacturer of the multipurpose cleaner Windex and the stain remover Shout, had essentially the same claims raised here, including reliance on the FTC guides,

---

[5] We have nevertheless examined the Web site to confirm what the combined green drop and Web site name do convey: that the Web site includes information about the company's environmental efforts, goals, activities, and initiatives. Again, this is permitted—indeed, encouraged—by the FTC guides, as well as the EMCA that incorporates the guides. The EMCA in fact requires that advertisers maintain, and make available to the public, records explaining and substantiating their environmental claims (§ 17580; see fn. 4, *ante*), and it seems obvious that the Web site helps defendants comply with the mandate. (<http://www.fijiwater.com/giving-back/> [as of May 26, 2011].)

and a copy of the amended complaint from that suit showed it to be a template for Hill's complaint.

The suit involved a label with a green background that stated on the front side, "Greenlist™ Ingredients" under a stylized drawing of two leaves and a stem. The back side, readable through the bottle, added: "Greenlist™ is a rating system that promotes the use of environmentally responsible ingredients. For additional information, visit www.scjohnson.com." The district court judge denied the defendant's motion to dismiss, writing that "it is plausible that a reasonable consumer would interpret the Greenlist label as being from a third party." (*Koh, supra*, 2010 U.S.Dist. Lexis 654 at p. *6.)

Without passing on the correctness of the *Koh* ruling, we simply point out that the label there was very different from the plain green drop symbol here. It made express representations of environmental superiority, used the trademarked name "Greenlist," a name not immediately apt to be associated with the product or its manufacturers, and identified the name as a *rating system*, which further suggested an independent source that rated other manufacturers' products as well.

### D.  *The* Kwikset *Ruling*

*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310 [120 Cal.Rptr.3d 741, 246 P.3d 877], decided after the briefing in this case was complete and cited by Hill in a letter to this court, is not to the contrary. To begin with, *Kwikset* is a standing case, holding that persons who can truthfully allege they were deceived by a product's label into spending money to buy the product, and would not have bought it otherwise, have lost money or property within the meaning of the UCL, and thus have standing to sue. It is thus distinguishable procedurally. Also factually.

The deception in *Kwikset* was the defendants' labeling of its locksets as "Made in U.S.A.," when in fact more than two dozen of the defendants' products "either contained screws or pins made in Taiwan or involved latch subassembly performed in Mexico." (*Kwikset, supra*, 51 Cal.4th at pp. 317–318.) Ruling for the plaintiffs, the Supreme Court said this, as quoted in Hill's letter: "Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source. [Citation.] An entire body of law . . . exists to protect commercial and consumer interests in accurate label representations as to source, because consumers rely on the accuracy of those representations in making their

buying decisions. [¶] To some consumers, processes and places of origin matter. [Citation.]" (*Id.* at p. 328.)

We agree wholeheartedly that "labels matter," all labels, including that here. Defendants obviously put the green drop on the label for a purpose, as their counsel had to necessarily concede at oral argument: the green drop was for a "marketing" purpose, to signify "something to do with the environment." Such concession notwithstanding, we hold—and it is all we hold— that no reasonable consumer would be misled to think that the green drop represents a third party organization's endorsement or that Fiji water is environmentally superior to that of the competition.

### E. *Common Law Claims*

■  Hill claims common law fraud. Unlike "fraud" as used in the statutory sense for consumer protection (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211 [197 Cal.Rptr. 783, 673 P.2d 660]), common law fraud requires particularity of pleading for all the traditional elements, including not just misrepresentation, but the plaintiff's justifiable reliance. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 47 [77 Cal.Rptr.2d 709, 960 P.2d 513]; *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [49 Cal.Rptr.2d 377, 909 P.2d 981].) The problem for Hill is that she cannot show, from the green drop, the Web site reference, or the "Every Drop Is Green" slogan, a representation in Fiji advertising that would mislead a reasonable person. Her common law claim thus fails.

■  Hill's claim for unjust enrichment fails as well. Unjust enrichment is not a cause of action, just a restitution claim. (*McKell v. Washington Mutual, Inc., supra,* 142 Cal.App.4th at p. 1490; *Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793 [131 Cal.Rptr.2d 347].) There being no actionable wrong, there is no basis for the relief.

### F. *Leave to Amend*

Hill asks that, in the event we affirm the order sustaining the demurrer, "the trial court's denial of leave to amend, which was an abuse of discretion, be overruled. Any defects in the [complaint] can be cured by amendment." Hill's saying so does not make it so, however, and it is her burden to show *how* she might amend to cure the deficiencies. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 [25 Cal.Rptr.3d 320, 106 P.3d 976].) She has not done this, and so we uphold the denial of leave to amend, as well as the sustaining of the demurrer.

## III.   DISPOSITION

The judgment is affirmed.

Kline, P. J., and Haerle, J., concurred.

# Appendix

**Independent Seal Designating Product is Not Tested on Animals**

**Symbol of Earth Day (day set aside for celebration of the environment)**

**Misleading FijiGreen Green Water Drop**

**Environmental Protection Agency Seal for Independently Certified Environmental Products**

**Independent Seal Designating Product as Meeting Environmental standards**