NOT FOR PUBLICATION

FILED

AUG 7 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

LAUREN SOUTER, individually, and on behalf of others similarly situated,

            Plaintiff-Appellant,

    v.

EDGEWELL PERSONAL CARE COMPANY; EDGEWELL PERSONAL CARE BRANDS, LLC; EDGEWELL PERSONAL CARE, LLC,

            Defendants-Appellees.

No.   22-55898

D.C. No.
3:20-cv-01486-TWR-BLM

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
Todd W. Robinson, District Judge, Presiding

Argued and Submitted July 20, 2023
Pasadena, California

Before: NGUYEN and FORREST, Circuit Judges, and BENNETT,[**] Senior District Judge.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Richard D. Bennett, United States Senior District Judge for the District of Maryland, sitting by designation.

Defendants, Edgewell Personal Care Co. and its associated business entities ("Edgewell"), manufacture Wet Ones Hand Wipes, a hand-cleaning product that is advertised as "hypoallergenic," "gentle," and effective against "99.99% of Germs." In this putative class action, Plaintiff Lauren Souter ("Souter") alleges that these representations are misleading because the Wet Ones Hand Wipes contain several skin allergens and are not as effective as advertised. She brings claims for quasi-contract, express warranty, and violations of three California consumer protection statutes.[1] The district court granted three consecutive motions to dismiss, culminating in a dismissal of the operative Second Amended Complaint ("SAC") with prejudice. Souter appeals that dismissal. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse and remand.

Each of Souter's claims requires her to allege that "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by the claimed misrepresentations. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). This standard is evaluated from the perspective of "the ordinary consumer within the larger population," who is not

---

[1] All of Souter's claims are evaluated under the reasonable consumer test or equivalent standards. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (consumer protection statutes); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quasi-contract); *Brady v. Bayer Corp.*, 237 Cal. Rptr. 3d 683, 700 (Ct. App. 2018) (express warranty).

typically "exceptionally acute [or] sophisticated" or "wary [and] suspicious of advertising claims," *Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 116 (Ct. App. 2011) (quoting *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 496–97 (Ct. App. 2003)). Additionally, courts may consider all information available to the reasonable consumer, *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021), and may look to the product's back label to clarify front-label ambiguities, *McGinity*, 69 F.4th at 1099.

Souter challenges two label claims affixed to the Hand Wipes: that they (1) "Kill 99.99% of Germs," (the "Efficacy Representation"); and (2) are "Hypoallergenic" (the "Hypoallergenic Representation"). These statements are ambiguous: The product label leaves the term "hypoallergenic" undefined, and it fails to clarify whether the Efficacy Representation refers to "99.99%" of germ *species* or 99.99% of *individual germs* found on the hands at the time of application. Moreover, the back label provides only the following explanation:

> Wet Ones® Antibacterial Hand Wipes kill 99.99% of germs and wipe away dirt, providing a better clean than hand sanitizers. They are specially formulated to be tough on dirt and germs, yet gentle on skin, so you can confidently keep your hands fresh and clean when soap and water are not available.

For the following reasons, Souter plausibly alleges that both of the challenged representations could mislead "a significant portion of the general consuming public." *McGinity*, 69 F.4th at 1097 (quoting *Ebner*, 838 F.3d at 965). Accordingly,

3

the district court erred in dismissing the SAC.

**The Efficacy Representation:** The front label Efficacy Representation has no qualifier or limitation. According to the SAC, the single active ingredient in the Wet Ones, benzalkonium chloride, cannot eliminate many pathogens that are commonly found on hands, and are responsible for millions of infections every year. That ingredient has allegedly proven to be only 46% to 60% effective in a real-world setting. Moreover, the SAC alleges that the Wet Ones are ineffective against several pathogens that are commonly found on the hands, with data and supporting facts to highlight their ineffectiveness. These allegations, viewed in the light most favorable to Souter, plausibly suggest that a reasonable consumer could be misled by the label's assertion that the Hand Wipes kill "99.99% of Germs."

The district court went further, concluding as a matter of law that a reasonable consumer could only expect the Hand Wipes to be effective against "[germ species] that are transmissible by hand *and* that are typically prevented by ensuring one's hands are clean." This was legal error. The ordinary reasonable consumer has "very little scientific background." *Brady*, 237 Cal. Rptr. 3d at 698. A reasonable consumer would likely presume that the Hand Wipes are intended only for use on human hands—but it is not necessarily clear that such consumers are capable of discerning which pathogens "are typically prevented by ensuring one's hands are clean." *Cf. Reid v. Johnson & Johnson*, 780 F.3d 952, 960 (9th Cir. 2015) ("[I]t is far from clear

4

that typical consumers understand that . . . partially hydrogenated vegetable oil necessarily has trans fat.").[2] It was error for the district court to conclusively hold otherwise at the motion to dismiss stage.

**The Hypoallergenic Representation:** The Hand Wipes' label also claims that the Wipes are "hypoallergenic" and "gentle on the skin." The parties offer competing definitions of "hypoallergenic." In the operative SAC, Souter cites a dictionary definition and alleges that a reasonable consumer would read this term to assert that the Hand Wipes are "designed to reduce or minimize the possibility of an allergic response, as by containing relatively few or no potentially irritating substances." She also alleges that this representation would mislead a reasonable consumer because several of the Wipes' ingredients—including their sole active ingredient—are documented allergens and skin irritants.

Despite the linguistic ambiguity, and notwithstanding its obligation to view the SAC in the light most favorable to Souter, the district court assembled its own definition of the term "hypoallergenic." The court reasoned that a consumer would

---

[2] Edgewell relies heavily on our decision in *Trader Joe's*, in which we held that a promise of "100% New Zealand Manuka Honey" was not misleading as a matter of law. 4 F.4th at 883. But that holding rested on commonsense inferences regarding the foraging patterns of honeybees, and the extremely low price of the honey—at $1.59/ounce, rather than the comparable market rate of $21.55/ounce. *Id.* at 883. Comparatively, it is not so clear that an average consumer has the scientific wherewithal to discern which pathogens can and cannot be killed by handwashing, particularly in context of a fast-moving, real-world purchasing decision.

focus on the overall comparative effect of the product in relation to other products rather than the effects of the product's ingredients, and it faulted Souter for failing to allege (1) that a reasonable consumer would assume that the Hand Wipes have "no potential allergens"; (2) that Souter "suffered an allergic reaction after using the product;" or (3) that the product "has a higher likelihood of causing a reaction as compared to similar product on the market." These specifications are not compelled by our caselaw and are no more plausible than the well-pled allegations offered in the SAC. At the motion to dismiss stage, it was improper for the district court to select between competing plausible interpretations of an ambiguous term.

 **REVERSED** and **REMANDED.**