[No. B159313. Second Dist., Div. Three. Feb. 27, 2003.]

JEFFREY GREENFIELD, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BILLY BLANKS et al., Real Parties in Interest.

**COUNSEL**

Manatt, Phelps & Phillips, Leonard D. Venger, Donald R. Brown; Isaacman, Kaufman & Painter, Alan L. Isaacman and Steven H. Blackman for Petitioner.

No appearance for Respondent.

Allen Matkins Leck Gamble & Mallory, Charles N. Kenworthy, Andrew E. Miller; Lavely & Singer, Martin D. Singer and Paul Karl Lukacs for Real Parties in Interest.

## OPINION

**ALDRICH, J.**—Petitioner, Jeffrey Greenfield (Greenfield), seeks a writ of mandate directing the trial court to vacate its order denying Greenfield's motion for summary adjudication as to real party in interest's, Billy Blanks (Blanks), first cause of action—a violation of the Talent Agencies Act—and to enter instead an order granting the motion. Greenfield asserts the trial court erred in determining Blanks had timely filed his Talent Agencies Act cause of action pursuant to the provisions of Labor Code section 1700.44, subdivision (c).

We determine the trial court erred in denying Greenfield's motion for summary adjudication. For the reasons stated below, we conclude that in order to toll the statute of limitations in matters involving the Talent Agencies Act, one must file the action or proceeding before the Labor Commissioner within one year of the alleged violation of the Act. Filing the action in the superior court will not serve to toll the statute of limitations. Accordingly, we grant Greenfield's petition for writ of mandate.

### FACTUAL AND PROCEDURAL BACKGROUND

According to his complaint, real party in interest and plaintiff in the underlying action, Blanks is a professional athlete, fitness instructor, actor and karate expert. He owns numerous "Tae Bo" studios and works as an actor for motion picture and television productions. At some point prior to 1997, petitioner and defendant, Greenfield, began providing Blanks and his companies with financial and accounting services. In approximately September of 1998, Greenfield, who is a certified public accountant but not a licensed talent agent, began acting as Blanks's agent and manager for certain projects and transactions. Up until that time, Blanks had been represented by an agent at the William Morris Agency. His agreement with that agency expired in 1999.

At some point in 1999, Greenfield attempted to negotiate an agreement with Blanks under which Greenfield would receive up to a 49 percent interest in one or more of Blanks's enterprises. At that time, Blanks's businesses were worth millions of dollars. Blanks suspected he was being defrauded by Greenfield and the relationship between the two men disintegrated. On November 4, 1999, Blanks filed suit against Greenfield, alleging

17 causes of action including fraud, breach of fiduciary duty, negligent misrepresentation and breach of oral contract.

As his first cause of action, Blanks alleged Greenfield had violated Labor Code section 1700.5 et seq., the Talent Agencies Act. Labor Code section 1700.5 provides in relevant part that "[n]o person shall engage in or carry on the occupation of a talent agency without first procuring a license therefor from the Labor Commissioner." Blanks alleged that, because Greenfield had failed to obtain such a license, any purported contract between Greenfield and Blanks was void and Blanks was entitled to full restitution of all moneys paid to Greenfield for his services as a supposed agent.

The Talent Agencies Act requires that claims first be heard by the Labor Commissioner. In addition, the relevant statute of limitations, stated in subdivision (c) of Labor Code section 1700.44, provides that an action or proceeding must be brought within one year of the alleged violation. According to the undisputed facts, Blanks's last payment to Greenfield for services rendered was made on August 2, 1999. Although Blanks filed his suit in superior court on November 4, 1999, he did not file a petition with the Labor Commissioner until August 28, 2000. Greenfield asserted that, since Blanks's petition to the Labor Commissioner was not filed until more than one year after he had made his final payment to Greenfield, the petition should be dismissed as untimely.

The trial court determined Blanks's civil action would be stayed while the matter was heard by the Labor Commissioner. Following a hearing, the commissioner issued his decision in an order dated March 11, 2002. Although the commissioner determined Greenfield had violated the act, he denied Blanks relief, stating, "The petitioner has failed to establish that commissions were paid during the one-year statute of limitations prescribed by Labor Code [section] 1700.44(c). Consequently, the petitioner is not entitled to disgorgement of commissions."

After the matter was resumed in the superior court, Greenfield made a motion for summary adjudication of Blanks's Labor Code section 1700.5 cause of action. In its tentative ruling, the trial court rejected Blanks's arguments and indicated it intended to grant Greenfield's motion for summary adjudication. However, following a hearing held on May 17, 2002, the trial court reversed itself and denied the motion.

Greenfield filed the present petition on June 14, 2002. On September 4, 2002, this court issued an order to show cause and set the matter for oral argument.

## DISCUSSION

### 1. *Summary Adjudication—Standard of Review*

Pursuant to Code of Civil Procedure, section 437c, subdivision (f)(1), "[a] party may move for summary adjudication as to one or more causes of action within an action . . . if that party contends that the cause of action has no merit or that there is no affirmative defense thereto, or that there is no merit to an affirmative defense . . . ." Subdivision (f)(2) of Code of Civil Procedure section 437c states in relevant part that "[a] motion for summary adjudication . . . shall proceed in all procedural respects as a motion for summary judgment. . . ." "On appeal, our review is de novo. [Citations.]" (*Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1727 [22 Cal.Rptr.2d 781].)

### 2. *Labor Code Section 1700.5 et seq.—The Talent Agencies Act*

#### a. *Statutory Construction*

■ "[O]ur primary duty when interpreting a statute is to determine and effectuate the Legislature's intent. [Citations.] When the language of a statute is clear and unambiguous, there is no need for interpretation and we must apply the statute as written. [Citations.]" (*LaFayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1382 [46 Cal.Rptr.2d 542].) " 'Words used in a statute . . . should be given the meaning they bear in ordinary use.' (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)" (*People v. Ramirez* (1995) 33 Cal.App.4th 559, 563 [39 Cal.Rptr.2d 374].)

#### b. *The Talent Agencies Act—Statute of Limitations*

The statute of limitations for the Talent Agencies Act is contained in subdivision (c) of Labor Code section 1700.44. That subdivision provides: "No action or proceeding shall be brought pursuant to this chapter with respect to any violation which is alleged to have occurred more than one year prior to commencement of the action or proceeding."

■ Blanks urges the filing of his action in superior court effectively tolled the statute of limitations with regard to Blanks's Labor Code section 1700.5 claim. The fact that he did not file a petition before the Labor Commissioner until approximately one week after the one-year statute of limitations had run did not render his Talent Agencies Act cause of action invalid. Labor Code section 1700.44, subdivision (c) requires that an artist

or entertainer file an "action" or "proceeding" within one year of an alleged violation of the Talent Agencies Act. Blanks indicates the fact that the Legislature chose to refer to both "action[s]" and "proceeding[s]" is significant. He argues the Legislature's choice of words indicates it intended to allow an artist to toll the statute of limitations by filing an "action" in the superior court or by instituting a "proceeding" before the Labor Commissioner.

In making this argument, Blanks relies on Code of Civil Procedure section 20 et seq. That code section makes a distinction between the terms "action" and "proceeding." However, these terms, as used in section 20 et seq., apply to matters held in a court of law, not before an administrative agency. Section 20 provides: "Judicial remedies are such as are administered by the Courts of justice, or by judicial officers empowered for that purpose by the Constitution and statutes of this State." Code of Civil Procedure section 21 provides: "These remedies are divided into two classes: [¶] 1. Actions; and, [¶] 2. Special proceedings." Section 22 of the Code of Civil Procedure indicates that: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Section 23 of the Code of Civil Procedure provides that "[e]very other remedy is a special proceeding." In *Agricultural Labor Relations Bd. v. Superior Court* (1983) 149 Cal.App.3d 709, 714 [196 Cal.Rptr. 920], the court recognized that, in general, " '[a]ctions' are distinguished from 'special proceedings' according to the *remedy* sought." (Original italics.) While an action is an ordinary proceeding in a court of law, special proceedings "are limited to cases that [are] neither actions at law nor suits in equity. [Citation.]" (*Ibid.*) In addition, there is generally no right to a jury trial in a special proceeding. (*Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 76 [109 Cal.Rptr.2d 1, 26 P.3d 332].)

Accordingly, we conclude that the Legislature intended to allow an artist to toll the statute of limitations only by filing an "action" or "proceeding" before the Labor Commissioner; the filing of an action or proceeding in superior court will not toll the statute of limitations. That conclusion is supported by judicial precedent.

In *Styne v. Stevens* (2001) 26 Cal.4th 42, 54 [109 Cal.Rptr.2d 14, 26 P.3d 343], our Supreme Court indicated that "[t]he Talent Agencies Act specifies that '[i]n cases of *controversy* arising under this chapter, the parties involved *shall refer* the *matters in dispute* to the Labor Commissioner, who shall hear and determine the same, subject to an appeal . . . to the superior court where the same shall be heard de novo.' (§ 1700.44, subd. (a) . . . .) 'The

Commissioner has the authority to hear and determine various disputes, *including the validity of artists' manager-artist contracts and the liability of the parties thereunder*. ([*Buchwald v. Superior Court* [(1967)] ·254 Cal.App.2d 347,] 357 [62 Cal.Rptr. 364].) The reference of disputes involving the [A]ct to the Commissioner is *mandatory*. [Citation.] Disputes *must* be heard by the Commissioner, and all remedies before the Commissioner *must* be exhausted before the parties can proceed to the superior court. [Citation.]" (Original italics.)

In *Humes v. MarGil Ventures, Inc.* (1985) 174 Cal.App.3d 486 [220 Cal.Rptr. 186], the plaintiff Mary-Margaret Humes, an actress, had entered into an agreement with Gilbert Cabot to form a theatrical production company called MarGil Ventures, Inc. Humes and Cabot had a falling out and Humes brought an action against Cabot and MarGil Ventures in superior court seeking involuntary dissolution of the corporation, removal of Cabot as director, rescission of the written employment agreement, accounting and damages for fraud. While the superior court action was pending, Humes filed a petition with the Labor Commissioner alleging Cabot had violated Labor Code section 1700.5 by acting as a talent agent without a license. The Labor Commissioner, after determining that Cabot had violated the act, declared the employment contract between Humes and Cabot void. Cabot appealed arguing, among other issues, that Humes had made an irrevocable election of remedies by initially bringing her action in superior court and was thus estopped from subsequently filing a petition for determination by the Labor Commissioner based on the same facts. The court rejected Cabot's argument. However, in doing so, it made the following comments: " '[I]n cases of controversy arising under this chapter the parties involved shall refer the matters in dispute to the Labor Commissioner, who shall hear and determine the same, subject to an appeal within 10 days after determination, to the superior court where the same shall be heard de novo.' " (*Humes v. MarGil Ventures, Inc., supra,* 174 Cal.App.3d at p. 494.) The court continued, "Section 1700.44 is mandatory; as to a controversy such as this one arising under the [Talent Agencies Act], the Labor Commissioner has original jurisdiction to hear and determine the same to the exclusion of the superior court, subject to an appeal to the superior court within 10 days after determination. [Citation.] Respondent had an administrative remedy which she was required to pursue regarding the alleged violation of the Labor Code. *Had she sought relief in [the] superior court for this violation without first referring the claim to the Labor Commissioner and securing a determination by such official, it would have been premature and could not have been maintained.* [Citations.] The controversy was properly and necessarily brought before the Labor Commissioner for determination." (*Id.* at pp. 494-495, italics added; see also *REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 494-495 [81 Cal.Rptr.2d 639].)

From this language, it can be reasonably inferred that, since matters involving the Talent Agencies Act must first be heard by the Labor Commissioner, they must also first be filed with the Labor Commissioner. Thus, to toll the Talent Agencies Act's statute of limitations, one must file his or her action or proceeding with the Labor Commissioner.

Blanks indicates that courts have, in other instances involving the Labor Code, allowed parties to toll the statute of limitations by filing their actions in court. In *Triad Data Services, Inc. v. Jackson* (1984) 153 Cal.App.3d Supp. 1, disapproved on another ground in *Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 370 [127 Cal.Rptr.2d 516, 58 P.3d 367], Jackson had been employed by Triad for several months. On May 11, 1981, Jackson filed a complaint with the Labor Commissioner claiming Triad Data Services, now her former employer, owed her backpay. To consider the matter, the appellate department of the superior court found it necessary to interpret Labor Code section 203 which reads in relevant part: " 'If an employer willfully fails to pay, without abatement or reduction . . . any wages of an employee who is discharged or who quits, the wages of such employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but such wages shall not continue for more than 30 days.' " (153 Cal.App.3d at pp. Supp. 10-11, italics omitted.)

The court determined that "the filing of . . . a claim or complaint with the Labor Commissioner [did] not terminate defendant's waiting time penalty rights under [Labor Code] section 203 . . . ." (*Triad Data Services, Inc. v. Jackson, supra,* 153 Cal.App.3d at p. Supp. 11.) The court continued, the "purpose of section 203 is to compel the prompt payment of wages. . . . The object of the statutory plan is to encourage [an] employer[] to pay amounts concededly owed by him to his discharged or terminated employee without undue delay and to hasten settlement of disputed amounts. None of the related statutory provisions penalize either the employer or employee for prompt action designated to settle the dispute. To interpret the phrase, 'commence an action therefor,' contained in section 203 of the Labor Code, as terminating 'waiting time' rights upon the filing of a claim with the Labor Commissioner would discourage the employee from filing a claim with the Labor Commissioner as the employee would thereby lose leverage in his favor to encourage the employer to pay out amounts actually due the employee, while at the same time encouraging the employer not to pay up or settle, as he would suffer no penalty by this delay. . . ." (*Id.* at pp. Supp. 11-12.)

In support of its conclusion, the appellate department noted that California Code of Civil Procedure, section 22 defines " 'actions' " as an " 'ordinary

proceeding in a *court of justice* . . . .'" (*Triad Data Services, Inc. v. Jackson, supra,* 153 Cal.App.3d at p. Supp. 12, italics added by *Triad Data Services, Inc.*) Accordingly, the court found the "presentation of [Jackson's] wage claim to the Labor Commissioner did not constitute the commencement of an *action.*" (*Ibid.,* italics added.) The court continued, "It is noted that section 203 of the Labor Code uses interchangeably the words 'action' and 'suit.' The second paragraph thereof significantly indicates that '[s]uit may be filed for such penalties at any time before the expiration of the statute of limitations . . . .' The only reasonable interpretation of the legislative intent encompassed in the foregoing provision that 'suit may be filed' is that it refers to an action being commenced in a court of justice, not before a commission or board. . . ." (*Id.* at pp. Supp. 12-13.)

The present matter is distinguishable from *Triad Data Services.* Initially, the court's opinion in *Triad* considers, not the Talent Agencies Act, but Labor Code section 203. That section deals with employees owed backpay. Should an employee be forced to first file his or her claim for backpay with the Labor Commissioner, the filing of that claim could have caused the employee to lose leverage in his favor and allowed the employer to claim he or she owed the employee less. (*Triad Data Services, Inc. v. Jackson, supra,* 153 Cal.App.3d at pp. Supp. 11-12.) Here, requiring a party to file his or her claim with the Labor Commissioner to toll the statute of limitations does not result in either party losing leverage or gaining any advantage over the other.

Finally, the opinion of the "Commissioner, whose interpretation of a statute he is charged with enforcing[,] deserves substantial weight [citation] . . . ." (*Styne v. Stevens, supra,* 26 Cal.4th at p. 53.) In the present case, the commissioner concluded that, although Greenfield had violated the act, Blanks was not entitled to relief. The Labor Commissioner stated, "The petitioner has failed to establish that commissions were paid during the one-year statute of limitations prescribed by Labor Code [section] 1700.44(c). Consequently, the petitioner is not entitled to disgorgement of commissions."

c. *Labor Code Section 1700.44, Subdivision (c)—Application When the Talent Agencies Act Is Used in Defense*

Blanks urges he filed his petition with the Labor Commissioner only in defense of Greenfield's cross-complaint. The cross-complaint was filed on December 6, 1999, and alleged Blanks owed Greenfield certain commissions. Relying on the California Supreme Court's opinion in *Styne v. Stevens, supra,* 26 Cal.4th 42, Blanks states there is no time limit within which an artist must file a petition if he is making defensive use of the act in order to counter an opposing party's attempt to unlawfully obtain commissions.

In *Styne v. Stevens, supra,* 26 Cal.4th 42, the plaintiff, Norton Styne, sued entertainer Connie Stevens for sums allegedly due under an oral contract. Before trial, Stevens brought a motion for summary judgment in part on the ground that Styne had acted as a talent agency, but lacked the necessary license. Under those circumstances, any contracts made by Styne were illegal and void. Styne then argued that Stevens's "Act-based defense was barred by her failure to raise it, and submit it to the Commissioner, within the Act's one-year limitations period." (*Id.* at p. 47.)

On review, the Supreme Court determined that "a *statute of limitations* does not bar a *defense* involving no claim for affirmative relief. Hence, [Labor Code] section 1700.44, subdivision (c), the one-year limitations period contained in the Talent Agencies Act, did not affect the times within which Stevens could take actions necessary to assert her Act-based defense against Styne's suit for breach of contract. . . ." (*Styne v. Stevens, supra,* 26 Cal.4th at p. 47.) Stevens had not cross-complained and any assertion she had made under the Talent Agencies Act was being used only as a defense. Even so, the court determined that "under section 1700.44, subdivision (a), Stevens's Act-based claims [or defenses], if colorable, must first be referred to the Commissioner for resolution." (*Ibid.*)

In explaining its decision, the Supreme Court stated, "Statutes of limitations bar 'actions or proceedings' [citation], thus guarding against stale claims and affording repose against long-delayed litigation. They act as shields, not swords. [Citation.] Thus, we long ago explained with respect to a fraud defense that 'neither the limitation of the statute nor the doctrine of laches will operate to bar the defense of the invalidity of the agreement upon the ground of fraud, for so long as the plaintiff is permitted to come into court seeking to enforce the agreement, the defendant may allege and prove fraud as a defense. In short, it is not incumbent upon one who has thus been defrauded to go into court and ask relief, but he may abide his time, and when enforcement is sought against him excuse himself from performance by proof of the fraud.' [Citation.] The same reasoning applies to any grounds for asserting the illegality of the contract upon which the plaintiff sues. . . . [¶] . . . [¶] Styne notes that the Talent Agencies Act limits 'actions and proceedings' (§ 1700.44, subd. (c)) and contains no *exception* for defensive use, though the Legislature must have understood that artists would routinely commence 'proceedings' before the Commissioner, seeking to avoid their contractual commitments by claiming violations of the Act. But the Act's phrase 'actions and proceedings'—which parallels the universal statute of limitations reference to 'actions' (see, e.g., Code Civ. Proc., § 335 et seq.)— must be construed in the same fashion, as referring to claims for affirmative relief. Nothing in the language of section 1700.44, subdivision (c) suggests

that, in contrast with other statutory limitations periods, it was intended to bar a mere defense to a claim for relief initiated by another." (*Styne v. Stevens, supra,* 26 Cal.4th at pp. 52-53.)

In the present case, Blanks is not merely defending against a claim for relief initiated by another. Blanks initiated the suit against Greenfield and alleged the Labor Code section 1700.5 cause of action in his complaint. Although Greenfield filed a cross-complaint, Blanks's petition with the Labor Commissioner was not filed strictly in defense of Greenfield's claims. Blanks needed a ruling by the Labor Commissioner on his Labor Code section 1700.5 allegation before he could proceed with the claim in superior court.

### 3. *Conclusion*

Blanks's assertion he filed his petition with the Labor Commissioner only in defense of Greenfield's cross-complaint is without merit. Blanks initiated the suit against Greenfield and, by asserting a cause of action under the Talent Agencies Act in his complaint, was clearly seeking to affirmatively recover under the statute.

Further, we conclude Blanks failed to timely file his Talent Agencies Act cause of action. The wording of the applicable statute of limitations, Labor Code section 1700.44, subdivision (c), and supporting case law, indicate one may toll the act's statute of limitations only by filing an action or proceeding before the Labor Commissioner.

### DISPOSITION

The order to show cause, having served its purpose, is heretofore discharged. Let a writ of mandate issue directing the trial court to vacate its order denying Greenfield's motion for summary adjudication as to real party in interest's, Billy Blanks, first cause of action, a violation of the Talent Agencies Act, and to enter instead an order granting the motion.

Each party to bear its own costs.

Klein, P. J., and Kitching, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied June 11, 2003.