Filed 6/29/20

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| AMY WITTENBERG,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>DANIEL BORNSTEIN et al.,<br><br>     Defendants and Respondents. | A154994<br><br>(Alameda County Super.<br>Ct. No. RG17878949) |

     This appeal pertains to several actions and cross-actions filed by substantially the same parties from 2016 to 2018. The instant case involves a dispute primarily between Daniel Bornstein (Daniel)[1] and Amy Wittenberg, the two co-owners and managing members of Hertzel Enterprises LLC (Hertzel). As relevant here, Wittenberg filed the lawsuit below, asserting individual and derivative causes of action against Daniel and others which related to claims previously brought by Daniel in a separately filed action. The trial court sustained Daniel's demurrer to Wittenberg's first amended

---

*      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

[1]      For ease of identifying the Bornstein parties, we will refer to them by their first names. No disrespect is intended.

complaint without leave to amend, finding it barred by the compulsory cross-complaint statute.  (Code Civ. Proc., § 426.10 et seq.)[2]

We affirm the judgment.  In the published portion of our opinion, we hold that Wittenberg forfeited several legal arguments that she failed to present to the trial court below.  In doing so, we reject her contention that an appellate court is required to consider all arguments challenging an order sustaining a demurrer based on the compulsory cross-complaint statute when such arguments purport to raise purely legal issues that are belatedly raised for the first time on appeal.  In the unpublished portion, we conclude that the claims in Wittenberg's first amended complaint below were barred on their face by the compulsory cross-complaint statute because they were logically related to Daniel's cross-complaint in the previously filed action.

**FACTUAL AND PROCEDURAL BACKGROUND**

In September 2016, Daniel filed a complaint in Alameda County (RG16830541 ["the 541 action"]) to dissolve Bornstein & Bornstein (B&B), a law partnership he had formed in 1993 with Jonathan Bornstein (Jonathan), Daniel's brother and Wittenberg's ex-husband.

A few days later, Jonathan filed a separate action in San Francisco County against Daniel, individually and doing business as Bornstein Law, Daniel's wife Renuka Bornstein (Renuka), and several entities related to them, including Hertzel, Legal One Realty aka Bay Property Group (Legal One or BPG), and 482 W. MacArthur LLC (482 W. MacArthur).  The gist of Jonathan's San Francisco complaint was that Daniel improperly used the Bornstein name for his competing law practice and diverted money, resources, and assets away from B&B to his side real estate businesses,

---

[2]     All further statutory references are to the Code of Civil Procedure unless otherwise stated.

including Hertzel. Jonathan's action was transferred to Alameda County and consolidated with the 541 action. Thereafter, on September 29, 2016, Jonathan filed a cross-complaint against Daniel.[3]

Also on September 29, 2016, attorney Susan Breed filed a cross-complaint in the 541 action on behalf of Hertzel against Daniel, Legal One/BPG, and a BPG employee, for general negligence, breach of contract, common counts for open book account for money due and for money had and received, and fraud. The Hertzel cross-complaint, which Wittenberg had authorized, alleged in relevant part that the cross-defendants mismanaged two properties owned by Hertzel by taking commissions and charging management fees without a written agreement to do so, and by giving free rent to colleagues and family members. The cross-defendants also allegedly placed Hertzel's money in their trust account without authority to do so, used Hertzel's money to cover the expenses of other clients, delayed the disbursement of Hertzel's money from the trust account, and charged Hertzel for improper and false expenses. Hertzel further alleged that Daniel failed to disclose that he had been disciplined, sanctioned and punished by the California Department of Real Estate for mishandling client trust fund monies. Hertzel's cross-complaint was eventually dismissed without prejudice.[4]

In March 2017, Daniel filed a cross-complaint in the 541 action for involuntary dissolution of Hertzel (against Jonathan and Wittenberg), accounting of Hertzel (against Jonathan and Wittenberg), and violation of the

---

[3] Jonathan's cross-complaint was identical in all material respects to his San Francisco complaint.

[4] Though the dismissal was initially with prejudice, the trial court later granted a motion to set it aside and deem the dismissal to be without prejudice.

Comprehensive Computer Data Access and Fraud Act (Pen. Code, § 502) (against Jonathan only). Daniel alleged in relevant part that he and Wittenberg were co-owners and managing members of Hertzel, and that dissolution of Hertzel was reasonably necessary due to "the deterioration of the relationship between all parties" caused by the divorce of Wittenberg and Jonathan and the dissolution of B&B. Daniel later filed a first amended cross-complaint (FACC) adding new causes of action against Jonathan for breach of fiduciary duty, conversion, breach of contract, and violation of Business and Professions Code section 17200.

Wittenberg filed an answer to Daniel's FACC on September 22, 2017.[5] She asserted several affirmative defenses including equitable estoppel, unclean hands, and breach of fiduciary duties.

Trial in the 541 action commenced on October 17, 2017. On that day, Jonathan and Wittenberg filed a cross-complaint in the 541 action as well as the complaint initiating the separate action below in Alameda County (RG17878949 ["the 949 action"]). These pleadings were identical in all material respects, alleging the same causes of action against Daniel, Renuka,

---

[5] Daniel filed a request for judicial notice of the FACC and Wittenberg's answer thereto; the trial briefs by Jonathan, Daniel, Hertzel, and Wittenberg; excerpts from the trial transcript in the 541 action; and Wittenberg's declaration in support of her motion to set aside the dismissal with prejudice of Hertzel's cross-complaint. Wittenberg filed a request for judicial notice of the trial court's order granting her motion to set aside the dismissal with prejudice of Hertzel's cross-complaint, and a printout from the California Secretary of State's website providing information about Hertzel. We deferred consideration of these requests pending consideration of the appeal on its merits. We now grant the requests as to Daniel's FACC, Wittenberg's answer, and Wittenberg's declaration in support of her motion to set aside the dismissal of Hertzel's cross-complaint (Evid. Code, § 452, subd. (d)). We deny judicial notice of the remaining records as not relevant to our determination of the issues on appeal.

and 482 W. MacArthur for breach of fiduciary duty, breach of contract, constructive fraud, conversion, common counts, accounting, and constructive trust. Both pleadings also named Hertzel as a nominal defendant and asserted derivative claims on its behalf. The gist of these claims was that the cross-defendants/defendants stole hundreds of thousands of dollars from Hertzel's bank accounts to purchase property for Daniel and Renuka, failed to present Hertzel with certain real estate investment opportunities (including the property located at 482 West MacArthur Boulevard), used Hertzel's funds and creditworthiness to purchase or attempt to purchase properties for themselves, and used Hertzel's funds as interest-free loans.

The next day, Wittenberg filed a first amended cross-complaint in the 541 action, naming additional cross-defendants and asserting several new causes of action. Daniel and related parties filed a brief asking the trial court to strike Wittenberg's cross-complaint and first amended cross-complaint. On October 20, 2017, the trial court struck Wittenberg's first amended cross-complaint as having been filed without leave of court.

In November 2017, Wittenberg moved to consolidate the 541 and 949 actions. The trial court denied the motion, finding that consolidation would delay the trial in the 541 action.

In January 2018, Wittenberg filed a first amended complaint (FAC) in the 949 action.[6] As relevant here, the FAC added new claims for theft of funds, negligence, failure to supervise, and failure to disclose, and more specific allegations of the terms of the parties' agreements, including an operating agreement that required all income generated from Hertzel's assets to be allocated among the members by unanimous agreement. The FAC also alleged Daniel's fraudulent misrepresentation, concealment, and failure to

---

[6]    The FAC no longer named Jonathan as a plaintiff.

5

disclose his true intentions to convert Hertzel's funds, his failure to disclose his lack of care and fidelity as property manager for Hertzel's properties, and his discipline and punishment by the Department of Real Estate for mishandling client trust funds.

Daniel, Renuka, and 482 W. MacArthur demurred to the FAC on the grounds that (1) it was barred because it had to be brought as a compulsory cross-complaint against Daniel in the 541 action, (2) it was untimely under the applicable statute of limitations, and (3) it was barred by the doctrine of laches. As to Daniel, the trial court sustained the demurrer without leave to amend pursuant to the compulsory cross-complaint statute (§ 426.30) and ordered dismissal of all causes of action against Daniel in the 949 action.[7] Wittenberg appealed. (*Hudis v. Crawford* (2005) 125 Cal.App.4th 1586, 1590, fn. 4 [order sustaining demurrer without leave to amend and dismissing case is appealable].)

## DISCUSSION

Under California's compulsory cross-complaint statute, "if a party against whom a complaint has been filed and served fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff, such party may not thereafter in any other action assert against the plaintiff the related cause of action not pleaded." (§ 426.30, subd. (a).) " 'Related cause of action' means a cause of action which arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action which the plaintiff alleges in his complaint." (§ 426.10, subd. (c).)

---

[7]     As to Renuka and 482 W. MacArthur, the trial court sustained the demurrer with leave to amend on statute of limitations grounds.

6

The compulsory cross-complaint statute is designed to prevent "piecemeal litigation." (*Carroll v. Import Motors, Inc.* (1995) 33 Cal.App.4th 1429, 1436 (*Carroll*).) "The law abhors a multiplicity of actions, and the obvious intent of the Legislature in enacting the counterclaim statutes [citation] was to provide for the settlement, in a single action, of all conflicting claims between the parties arising out of the same transaction. [Citation.] Thus, a party cannot by negligence or design withhold issues and litigate them in successive actions; he may not split his demands or defenses; he may not submit his case in piecemeal fashion." (*Flickinger v. Swedlow Engineering Co.* (1955) 45 Cal.2d 388, 393.)

There are several statutory exceptions to the compulsory cross-complaint law. For example, section 426.30 does not apply if "[t]he court in which the action is pending does not have jurisdiction to render a personal judgment against the person who failed to plead the related cause of action." (§ 426.30, subd. (b)(1).) Additionally, the article governing compulsory cross-complaints "applies only to civil actions and does not apply to special proceedings" (§ 426.60, subd. (a)), and is inapplicable "where the only relief sought is a declaration of the rights and duties of the respective parties in an action for declaratory relief." (*Id.*, subd. (c).)

We independently review the trial court's decision to sustain Daniel's demurrer on the ground that Wittenberg's FAC is barred under the compulsory cross-complaint statute. (*Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 958 (*Align Technology*); *Carroll, supra,* 33 Cal.App.4th at p. 1435.)

## I.    Claims Subject to Forfeiture

On appeal, Wittenberg raises several independent grounds for reversal of the trial court's order based on the compulsory cross-complaint law. First,

she contends she was not required to bring her claims against Daniel in a cross-complaint in the 541 action because Daniel did not state valid underlying causes of action against her for dissolution and accounting of Hertzel.  Second, Wittenberg contends that proceedings for dissolution and accounting of a limited liability company are "special proceedings" to which the compulsory cross-complaint statute expressly does not apply.  Third, Wittenberg argues the compulsory cross-complaint statute does not apply because the trial court had no jurisdiction to award a personal judgment against her.  Fourth, she asserts the compulsory cross-complaint statute did not apply to Hertzel because it was not named as a cross-defendant in Daniel's earlier suit.  Finally, Wittenberg argues the 949 action did not assert "related causes of action" (§§ 426.10, subd. (c), § 426.30, subd. (a)) in relation to Daniel's cross-complaint because the two did not concern the same occurrence, transaction, or series of transactions and occurrences.

Based on Wittenberg's contentions at oral argument, we requested and received supplemental briefing on whether she forfeited the first three arguments set forth above by failing to present them to the trial court in opposition to the demurrer.  (*Bogacki v. Board of Supervisors* (1971) 5 Cal.3d 771, 780 (*Bogacki*) [issues not raised in trial court cannot be asserted for first time on appeal].)

While acknowledging this court generally has discretion to disregard new arguments on appeal, Wittenberg relies on *Gutierrez v. Carmax Auto Superstores of California* (2018) 19 Cal.App.5th 1234 (*Gutierrez*) for the proposition that an order sustaining a general demurrer cannot be upheld when the plaintiff has stated a cause of action under "any possible legal theory," including new legal theories raised for the first time on appeal.  Then, citing *Align Technology*, *supra*, 179 Cal.App.4th 949, Wittenberg

contends a demurrer based on the compulsory cross-complaint statute is a general demurrer, and thus, Daniel's demurrer was subject to *Gutierrez*'s "any possible legal theory" rationale. Wittenberg additionally contends the arguments at issue are not "new" at all because she made the same "core argument" in the trial court below.

With regard to the last point, Wittenberg cites portions from her trial court briefing where she argued that Daniel's accounting claim was "unsupported by any allegations of unlawful conduct whatsoever. . . . There is no allegation anywhere in [Daniel's] FACC pertaining to the ownership, operation or financial affairs of Hertzel that might warrant an accounting in the [541] action. No compulsory cross-complaint could possibly have been required absent such allegations." In context, it is clear that Wittenberg made these points to persuade the trial court that the 949 action did not arise out of the same transaction, occurrence, or series of transactions or occurrences as Daniel's dissolution and accounting claims in the 541 action. Thus, the core argument Wittenberg made below is entirely different from the new arguments she raises on appeal, i.e., that Daniel's dissolution and accounting claims are legally insufficient, that such claims constitute special proceedings within the meaning of section 426.60, subdivision(a), and that the trial court lacks jurisdiction to award a personal judgment against her.

We also find Wittenberg's reliance on *Gutierrez* and *Align Technology* to be unavailing. True, *Align Technology* cited legal authority regarding general demurrers before discussing whether the claims there should have been brought in a compulsory cross-complaint. (*Align Technology*, *supra*, 179 Cal.App.4th at p. 958.) However, *Align Technology* does not suffice as precedent on the point because the material distinction between general and special demurrers was simply not at issue in the case. (See *Blumhorst v.*

9

*Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1004 [cases are not authority for proposition not actually considered].)  For the reasons below, we cannot conclude that a demurrer based on the compulsory cross-complaint statute is subject to the rule articulated in *Gutierrez*.

" 'The familiar terms "general demurrer" and "special demurrer" do not appear in the statutes.' " (*McKenney v. Purepac Pharmaceutical Co.* (2008) 167 Cal.App.4th 72, 77.)  The term "general demurrer," however, universally applies to a demurrer that challenges the legal sufficiency of the factual allegations of a complaint or cause of action.  (*Ibid.*)  Put another way, " '[t]he absence of any allegation essential to a cause of action renders it vulnerable to a general demurrer.  A ruling on a general demurrer is thus a method of deciding the merits of the cause of action on assumed facts without a trial.' " (*Ibid.*)

In *Gutierrez*, the demurrer challenged the plaintiff's legal theory that the alleged existence of an undisclosed and unresolved safety recall constituted an actionable breach of the implied warranty of merchantability. (*Gutierrez*, *supra*, 19 Cal.App.5th at p. 1245.)  The demurrer was clearly testing the legal sufficiency of the pleaded facts, and in that circumstance, *Gutierrez* held that appellate courts are to consider "any possible legal theory" that might support the viability of the cause of action, including new theories raised for the first time on appeal.  (*Id.* at pp. 1244–1245.)  The rationale for liberally construing pleadings is thus rooted in the policy allowing a plaintiff to maintain a lawsuit if the plaintiff has, on any theory, properly pleaded facts indicating a valid cause of action.  (See *Colich v. United Concrete Pipe Corp.* (1956) 145 Cal.App.2d 102, 107–108.)

Here, in contrast, Daniel's demurrer on compulsory cross-complaint grounds did not challenge whether Wittenberg's factual allegations stated a

cause of action entitling her to relief on any theory, or whether she failed to allege a material fact essential to her causes of action. Rather, the demurrer objected to the form in which Wittenberg brought her claims, i.e., in a separately filed lawsuit instead of in a cross-complaint. This manner of challenging the complaint does not implicate the policy favoring a trial on the merits where the subject pleading discloses viable claims on "any possible legal theory." Rather, the crux of a compulsory cross complaint demurrer is based on the policy interest in preventing pleadings that result in piecemeal litigation and a multiplicity of suits. (*Carroll*, *supra*, 33 Cal.App.4th at pp. 1435–1436.)

While Wittenberg's other authorities recognize an appellate court's discretion to consider forfeited arguments that raise pure questions of law, none imposes a mandatory duty to do so. (E.g., *Key v. Tyler* (2019) 34 Cal.App.5th 505, 540; *Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal.App.4th 1358, 1365; *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767.) In this case, several factors support a discretionary refusal to consider Wittenberg's new arguments.

First, courts are more inclined to consider new legal issues on appeal where the public interest or public policy is involved. (*POET, LLC v. State Air Resources Bd.* (2013) 218 Cal.App.4th 681, 750–751.) The instant matter, however, involves only a private dispute and does not implicate matters of public interest or policy.

Second, "fairness is at the heart of a waiver claim. Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to

11

attack. [Citation.] Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 (*JRS Products*).)

These policy concerns resonate strongly here. As our recitation of the factual and procedural background shows, these parties have brought multiple related actions between and amongst themselves. Indeed, on the first day of trial in the 541 action, Wittenberg belatedly filed a first amended cross-complaint in that action without leave to do so, as well as an identical complaint in the separate 949 action below as an apparent fallback strategy in the event the first amended cross-complaint was stricken (as it eventually was). Wittenberg was likewise tardy in seeking consolidation of the 949 and 541 actions, arguing that the 949 action overlapped significantly with the issues in the 541 action. At this juncture, however, she attempts to raise new arguments on appeal to prosecute a supposedly separate and non-duplicative action. This is the type of bait and switch on appeal that needlessly consumes precious judicial resources and subjects the parties to avoidable expenses. (See *JRS Products*, *supra*, 115 Cal.App.4th at p. 178.)

Due to the dicta in *Align Technology*, *supra*, 179 Cal.App.4th 949, Wittenberg did not anticipate her forfeiture of the three arguments newly raised on appeal. However, even if we were to overlook her forfeiture, we would find no merit in those arguments for the reasons below.

Based on certain definitional sections of the Code of Civil Procedure (§§ 22 [defining "action"], 25 [defining "civil action"], and 26 [defining "obligation"]), Wittenberg first argues that because the compulsory cross-complaint statute "applies only to civil actions" (§ 426.60, subd. (a)), and a

12

"civil action" implies a legally cognizable right and a compensable injury, the compulsory cross-complaint statute necessarily entails testing the sufficiency of the underlying complaint. We are not persuaded. The term "civil action" is used in section 426.60, subdivision (a), simply to distinguish such actions from special proceedings. Wittenberg's contrary interpretation improperly conflates an "action"—i.e., the "judicial means or procedure of enforcing a right"—with its merits—"the subject or grounds of the action." (*Anderson v. No-Doz* (1955) 134 Cal.App.2d 11, 14–15.)

Next, Wittenberg argues that an action for dissolution and accounting of a limited liability corporation is a special proceeding to which the compulsory cross-complaint statute expressly does not apply. (See § 426.60, subd. (a).) Starting from the premise that a "special proceeding" is defined as neither an action at law nor a suit in equity, having a statutory origin and affording new rights and new remedies (*Greenfield v. Superior Court* (2003) 106 Cal.App.4th 743, 748; *Esparza v. Kadam, Inc.* (1960) 182 Cal.App.2d 802, 806–807), Wittenberg cites several cases for the proposition that an action for involuntary dissolution of a corporation is a special proceeding because the rights and relief are created entirely by statute. (E.g., *Rankin v. Frebank Co.* (1975) 47 Cal.App.3d 75, 92; *Merlino v. Fresno Macaroni Mfg. Co.* (1946) 74 Cal.App.2d 120, 124.) She further contends that because Daniel's accounting claim is merely incidental to his dissolution claim, the accounting is also a special proceeding not subject to the compulsory cross-complaint statute.

Even assuming an action to dissolve a limited liability company is a special proceeding, Wittenberg cites no section of the California Revised Uniform Limited Liability Company Act creating a mechanism for judicial *accounting* as it does for judicial *dissolution*. (Corp. Code, § 17707.03.)

13

Meanwhile, it is well-established that a suit for an accounting to determine an unliquidated and unascertained amount is in equity. (*Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1523, fn. 18; *Ely v. Gray* (1990) 224 Cal.App.3d 1257, 1261–1262 (*Ely*).)

Wittenberg argues that Daniel does not sufficiently allege an equitable accounting claim because he alleges no breach of any fiduciary duty that she owed to him and the company. But the case she cites in support—*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573—did not purport to limit the viable grounds for an accounting to breach of fiduciary duty and fraud. Rather, the court recognized that an accounting can also properly be based on allegations of a dispute, involving complicated accounts, over whether money is due to the plaintiff. (*Id.* at p. 594.) Here, Daniel alleges that he is owed his share of Hertzel's assets, but that the "amount of money due to the parties is unknown," and his allegations of deteriorating relationships and internal dissension among the parties reasonably support an inference that the amounts owed to him are in dispute. Accordingly, the accounting Daniel seeks is properly construed as a suit in equity, not a special proceeding.

Furthermore, Wittenberg's attempt to describe this complicated matter as a simple special proceeding is unavailing. Daniel brought his claims for dissolution and accounting of Hertzel within the context of a large, consolidated action, which included Daniel's complaint to dissolve B&B as well as Jonathan's separate action and cross-action against Daniel, Hertzel, and numerous others. Daniel's cross-complaint included not only claims for dissolution and accounting of Hertzel, but also several other tort, contract, and statutory claims against Jonathan. Daniel brought his cross-complaint in response to Jonathan's cross-action, in which Jonathan claimed that Daniel had improperly diverted monies and assets belonging to B&B to

14

various "partnership affiliated businesses," including Hertzel. Wittenberg fails to acknowledge that "[t]he term 'special proceeding' applies only to a proceeding that is distinct from, and not a mere part of, any underlying litigation. (*Avelar v. Superior Court* (1992) 7 Cal.App.4th 1270, 1275.) Here, the Hertzel dissolution/accounting action has never proceeded independently of the consolidated matter, which concerns the very assets that would be allocated between Hertzel's two co-owners.

Wittenberg alternatively contends that the compulsory cross-complaint statute (§ 426.60, subd. (c)) "does not apply where the only relief sought is a declaration of the rights and duties of the respective parties," and that here, Daniel's accounting claim merely seeks declaratory relief. But she cites no authority holding that section 426.60, subdivision (c), encompasses accounting claims that seek amounts due to the plaintiff. Her reliance on *Russo v. Scrambler Motorcycles* (1976) 56 Cal.App.3d 112 is misplaced because the appellant in that case was named as a defendant only in the declaratory relief cause of action. (*Id.* at pp. 115, 116–117.)

Finally, we find no merit in Wittenberg's contention that the trial court had no jurisdiction to award a personal judgment against her. (§ 426.30, subd. (b)(1).) There is no dispute that Wittenberg was domiciled in California at all relevant times, which was sufficient to bring her within the reach of California's jurisdiction for purposes of a personal judgment. (*Allen v. Superior Court* (1953) 41 Cal.2d 306, 310–311.) Furthermore, Wittenberg submitted to the trial court's jurisdiction when she filed an answer on the merits to Daniel's FACC. (§§ 410.50, subd. (a), 1014; *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1145.) None of the cases cited by Wittenberg regarding the trial court's claimed lack of in rem

15

jurisdiction over Hertzel supports her argument that the trial court lacked personal jurisdiction over her.

In sum, we may properly exercise our discretion to refuse consideration of Wittenberg's new arguments on appeal, and in any event, we conclude such arguments are meritless.

## II. Remaining Arguments

We now turn to the arguments Wittenberg properly preserved for appeal.

Wittenberg argues that the compulsory cross-complaint statute does not apply to Hertzel because it was not named as a cross-defendant by Daniel. As indicated, Wittenberg's FAC named Hertzel as a nominal defendant and asserted derivative claims on its behalf. A derivative action is, by definition, a lawsuit brought by a shareholder or member of a company on its behalf. (*Beachcomber Management Crystal Cove, LLC v. Superior Court* (2017) 13 Cal.App.5th 1105, 1118.) Although Daniel did not name Hertzel as a cross-defendant in his cross-complaint seeking an involuntary dissolution and accounting of Hertzel, he did name Wittenberg, who was the only other member of Hertzel besides Daniel who could assert derivative claims on Hertzel's behalf. Under the circumstances presented here, the strong public policy against a multiplicity of actions required Wittenberg, as the only other member of Hertzel, to bring any derivative claims she felt the company had against Daniel in the same proceeding for dissolution in which she was named by Daniel as a cross-defendant.

We further conclude that the derivative and individual claims in the 949 action were "related" to Daniel's cross-complaint within the meaning of section 426.30, subdivision (a). This relatedness requirement is construed broadly to effectuate the statute's purpose of avoiding piecemeal litigation

16

and a multiplicity of actions. (*Align Technology*, *supra*, 179 Cal.App.4th at p. 960.) Sufficient relatedness does not require not an absolute identity of factual backgrounds for the two claims, only a "logical relationship" between them. (*ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.* (2016) 5 Cal.App.5th 69, 82 (*ZF Micro*).) A logical relationship exists where the claims in the two actions involve common issues of law and fact. (*Ibid.*, citing *Currie Medical Specialties, Inc. v. Bowen* (1982) 136 Cal.App.3d 774, 777.) "Transaction" as used in the statute is also construed broadly and is not " 'confined to a single, isolated act or occurrence . . . but may embrace a series of acts or occurrences logically interrelated.' " (*Align Technology*, *supra*, at p. 959.)

Both Daniel's cross-complaint in the 541 action and the FAC's causes of action in the 949 action involve the same entity and enterprise—Hertzel. Daniel's cross-action sought the dissolution of Hertzel and an accounting of its revenues and expenses. Such accounting would entail a full examination of all properties and monies belonging to Hertzel and the distribution of its assets. (Corp. Code, § 17707.05.) The claims in the FAC likewise sought an examination of Hertzel's properties and monies and a fair allocation thereof, as Wittenberg alleged that Daniel and Renuka stole $250,000 from Hertzel and misused these funds to purchase properties for themselves. These claims would also involve an examination of Hertzel's properties, as Wittenberg alleged that Daniel usurped real estate investment opportunities from Hertzel and her. In short, the derivative and individual claims in the 949 action are logically related to the same assets, including funds and properties, that would be examined in an accounting of Hertzel.

Wittenberg argues that the claims in the 949 action go far beyond a basic accounting of Hertzel because she alleges Daniel's failure to present her

with investment opportunities and profits that were never part of Hertzel's books and accounts. But this misapplies the relevant standard for relatedness. As discussed, a logical relationship, not absolute identity, is the relevant standard, and it is to be construed broadly. (*ZF Micro, supra*, 5 Cal.App.5th at p. 82.) Wittenberg fails to dispute the logical relationship between, on the one hand, proceedings to examine and distribute Hertzel's assets, and on the other, claims that certain properties and monies were wrongfully withheld from the company's collection of assets.

Indeed, as we have emphasized, Wittenberg's own words and actions throughout the history of these lawsuits support the logical relationship between them. Wittenberg actually filed a cross-complaint in Daniel's cross-action that was identical to her complaint in the 949 action. And after her cross-complaint and first amended cross-complaint were stricken for having been filed without leave of court, Wittenberg sought to consolidate the 541 and 949 actions by arguing that they involved common questions of law and fact, the same business entities and properties, and the same issues of fact and law.[8] She even acknowledged that "[a]n accounting will also show that Daniel Bornstein and Renuka converted and otherwise misused Hertzel funds to enrich themselves at the expense of Hertzel and Ms. Wittenberg," and that her affirmative defenses of equitable estoppel, unclean hands, and breach of fiduciary duty in her answer to Daniel's cross-complaint "will be proven by the same evidence—including documents, contracts, e-mails and the like, as well as testimony from Daniel Bornstein, Renuka Bornstein,

---

[8] Although the trial court denied the motion to consolidate, it acknowledged that "there is overlap in issues raised in the two actions, as well as in the evidence relevant to such issues," but the court concluded that this was "not sufficient to warrant the delay and prejudice that would be caused to the other parties in the [541] case if the two cases were consolidated."

18

Jonathan Bornstein, Amy Wittenberg—that Ms. Wittenberg will use to prove claims in" the 949 action. These same arguments support the relatedness of the actions for purposes of the compulsory cross-complaint statute.

Wittenberg further argues that because section 426.30, subdivision (a), applies only to related causes of action that a defendant "has" at the time he or she answers the complaint, and fraud claims are generally subject to the "delayed discovery rule" for statute of limitations purposes, the compulsory cross-complaint statute does not apply to the fraud-based causes of action because there is nothing on the face of the FAC that shows her discovery of the fraud as of September 22, 2017, i.e., the date she filed her answer to Daniel's cross-complaint.

We conclude Wittenberg forfeited this argument by failing to present it to the trial court below. (*Bogacki*, *supra*, 5 Cal.3d at p. 780.) Furthermore, she cites no authority for the position that the delayed discovery rule applies to the determination of when a plaintiff "has" a cause of action for purposes of section 426.30, subdivision (a).

## DISPOSITION

The judgment is affirmed. Daniel is entitled to his costs on appeal.

19

_____

Fujisaki, J.

WE CONCUR:

_____

Siggins, P. J.

_____

Jackson, J.

A154994

<u>Amy Wittenberg v. Daniel Bornstein et al.</u>
(A154994)


Trial Court:        Alameda County



Trial Judge:        Hon. Paul D. Herbert



Attorneys:        Pacific Legal Group, Douglas A. Applegate; Finkle Law
                  Group, Lonnie Finkel for Plaintiff and Appellant.

                  Peretz and Associates, Yosef Peretz for Defendants and
                  Respondents.